IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 09-cv-01834-ZLW

CARI L. BEEBE,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

    Plaintiff appeals the February 25, 2009, written decision of Administrative Law Judge William Musseman (ALJ) denying her claim for Social Security Supplemental Security Income (SSI). The ALJ's decision was affirmed by the Appeals Council on June 10, 2009. (R. 1-3). This appeal was timely filed.

    This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court has determined that the appeal can be resolved on the parties' briefing and that no oral argument is necessary.

**BACKGROUND**

    **A.**    **Personal History, Alleged Disability, and Filing of Claims**

Plaintiff was born on May 9, 1970. (R. 16). Plaintiff is single with two teenage children, lives in Canon City, Colorado, and has a college degree in history. (R. 21-22, 69-70).

Plaintiff filed a SSI application on February 28, 2007, originally alleging a disability onset date of October 31, 2002. (R. 69). Plaintiff later amended the onset date to February 15, 2007. (R. 9). Plaintiff alleges the combination of the following conditions render her disabled: back and neck injuries and nerve damage from two car accidents occurring in 2002. (R. 82). Plaintiff alleges constant daily pain in her head, neck, back, and shoulders. (R. 90).

Plaintiff reported no difficulties caring for herself. (R. 94). On a typical day she showered, helped her children get to school, did laundry, rested, did other chores, exercised and stretched, and cooked dinner for the family. (R. 91, 95).

<u>To receive SSI benefits, Plaintiff must show she was disabled since February 15, 2007, and the impairment lasted twelve months or was expected to last twelve months</u>.[1]

Plaintiff's initial application was denied on July 26, 2007. (R. 36). Plaintiff timely filed a request for her case to be heard by an ALJ. (R. 9).

---

[1] 42 U.S.C. § 423(d)(1)(A).

### B. Work History

Plaintiff has not been employed since February 2002. (R. 82). Plaintiff's last job was as a greenhouse laborer. (R. 171). Plaintiff claimed she stopped working because she "was in two back to [] back car accidents [] in Oct. of 2003 and th[e]n in 11/2003."[2] (R. 82).

Prior to this job, Plaintiff had worked in variety of other positions including assembly line worker, cashier, clerk, and self-employed crafts maker. (R. 83).

### C. Medical/Disability Evidence

Plaintiff's disability onset date is February 15, 2007. There is extensive medical documentation for the time period prior to this date, and the ALJ references these records in his order. Although this documentation is useful to provide background context of Plaintiff's treatment history, it will not be discussed further here as it is not relevant to determining whether Plaintiff was disabled in the time period on or after February 15, 2007.[3]

Plaintiff saw Dr. William Herrera, M.D., a neurologist, on February 21, 2007. (R. 163). Plaintiff had first visited Herrera in August of 2006. (R. 166). She reported that

---

[2] Given Plaintiff's other testimony, the Court assumes that these car accidents took place in 2002, not 2003.

[3] The crucial inquiry is what limitations Plaintiff was experiencing during the alleged period of disability. *See* Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991) (*citing* Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985)) ("the proffered evidence [must] relate to the time period for which the benefits were denied."); *see* 20 C.F.R. § 416.912(d) (records normally required only for the twelve months prior to filing of a SSI application).

she was unable to work due to pain and side effects from medication since her car accidents in 2002. (R. 163). A neurological examination was normal. (R. 163). Dr. Herrera prescribed tramadol, an analgesic for moderate to severe pain. (R. 163).

On June 18, 2007, and September 17, 2007, Dr. Darvin Richie, M.D. drafted letters in support of Plaintiff's application for a loan discharge. (R. 179-80). Dr. Richie stated that Plaintiff was unable to work because she had constant daily pain in her neck and lower back which required continuous use of pain medication. (R. 179-80). Dr. Richie reported that Plaintiff complained of numbness in her hands which made it difficult to type, write, or drive, she often dropped things, and she had severe headaches, which caused nausea, vomiting, and photosensitivity to light. (R. 179). Dr. Richie stated that Plaintiff's medications were sedating and caused drowsiness, which made it unsafe for her to operate equipment and affected her performance in any job. (R. 179). Dr. Richie opined that it was "doubtful anyone would employ a person with this many disabilities." (R. 180).

In July 2007, a disability examiner found that Plaintiff could perform work at a light exertional level. (R. 110). The disability examiner found that Plaintiff could lift, carry, push, and pull ten pounds frequently and twenty pounds occasionally; could sit and stand/walk about six hours in an eight-hour workday; and had no postural, manipulation, communication, or environmental limitations. (R. 155-58).

In August 2007, Plaintiff slipped in a puddle and complained of pain and discomfort in her left pelvis, radiating to her buttock and thigh. (R. 175). She sought

physical therapy from Stephen Abraas, PT, to treat this injury. (R. 175-77).  She reported that her pain became sharper and more intense at the end of the day and was aggravated by walking, climbing stairs, carrying groceries, and sitting or standing for long periods. (R. 175).  Upon examination, she exhibited decreased mobility in her left pelvis but had a full range of motion in her lumbar spine, although she reported some discomfort during testing. (R. 175-76).  Her straight leg test was within functional limits, but provoked some discomfort in the left pelvis. (R. 176).  The physical therapist treated Plaintiff with "manual mobilization" of her left pelvis joint and recommended home exercises for lumbar stabilization. (R. 176).  A month later, Plaintiff reported that she was feeling much better and that the pain going down her leg had ceased. (R. 197).

In September 2007, Plaintiff saw Frank Bevacqua, a certified physician assistant, to determine her eligibility for a state welfare program. (R. 197).  Using a state checkbox form, Bevacqua indicated that Plaintiff was disabled and unable to work. (R. 168-69).

In December 2007, Plaintiff presented to Bevacqua with complaints of pain in her left thumb radiating into her wrist. (R. 196).  Bevacqua diagnosed Plaintiff with probable tendinitis and gave her a splint to immobilize her thumb. (R. 196).

In April 2008, Plaintiff presented to Bevacqua with complaints of increasing headaches and pain at the base of her skull. (R. 195).  She reported a history of migraines and stated she had several in the last week. (R. 195).  She denied any weakness or numbness in her upper extremities. (R. 195).  Bevacqua prescribed Imitrex, a medication for migraines. (R. 195).  An MRI of her cervical spine showed

reversal of the normal cervical curvature and mild to moderate narrowing of the spinal canal and the openings through which nerves pass through the spinal cord at C5-6 and C6-7. (R. 171-72).  Dr. William Bufkin, M.D., the MRI reviewing physician, noted that the narrowing at C5-6 and C6-7 had progressed when compared to Plaintiff's December 2002 MRI. (R. 172-73).

Plaintiff saw Bevacqua in June 2008 for a routine follow-up at which she reported the Imitrex caused nausea. (R. 194).  Plaintiff displayed good strength and equal deep tendon reflexes in her upper extremities. (R. 194).

On July 31, 2008, Plaintiff saw neurologist Dr. R. Lindsay Lilly, M.D. for neck pain that she claimed derived from her 2002 car accidents. (R. 189).  Plaintiff rated her pain from moderate to severe. (R. 189).  She reported intermittent weakness diffusely in her right arm and tingling in her left arm, but no pain, weakness, or sensory loss. (R. 189). Inspection of Plaintiff's cervical spine was unremarkable, but Dr. Lilly reported some neck tenderness. (R. 190).  Muscle spasms were absent, and her range of motion was painful but normal. (R. 190).  Cervical spine nerve root provocation testing was negative. (R. 190).  Dr. Lilly described his examinations of both of Plaintiff's arms as "basically unremarkable." (R. 191).  Nerve conduction studies were normal. (R. 185).

In late August 2008, Dr. Lilly diagnosed Plaintiff with cervical radiculitis (nerve root inflamation) and spondylosis (spinal osteoarthritis) and recommended home spine strengthening and flexibility exercises. (R. 187).  Dr. Lilly noted that Plaintiff was "not interested in pursuing any surgical considerations at this time." (R. 187).

### D.    The Administrative Hearing (R. 18-35)

The administrative hearing was held in Denver, Colorado on October 18, 2008. (R. 18). Plaintiff was represented by an attorney. The following individuals testified: Plaintiff and Douglas Pridum, a vocational expert.

Plaintiff testified that she had a herniated cervical disk and that Dr. Lilly told her that surgical repair of the disk was an option, although she later stated that she had not had surgery because "[n]obody has deemed it necessary or even mentioned that it was a possibility." (R. 24).

Plaintiff testified that she took Vicodin and ibuprofen four times daily to treat her pain. (R. 25). She also did cervical traction and neck stretches daily as prescribed by Dr. Lilly, used a heating pad, and laid down almost every afternoon. (R. 30-31). On a bad day, she would only get out of bed long enough to take her children to school and then go back to bed. (R. 31).

Plaintiff claimed that she left her employment at a history museum in 2002 because she had been injured in two car accidents and "was under . . . doctor's orders not to return" to work. (R. 22). She stated she could not sit or stand very long without pain and that her left arm went numb when she was typing or driving, although she later claimed that her left arm "is pretty much numb all the time" and her right arm went numb if it was "up," such as when she was driving, typing, or holding a book. (R. 23-24). She stated she could only lift a gallon of milk; lifting heavier objects caused pain and she risked dropping them. (R. 24). Plaintiff stated her pain medication made her

groggy and drowsy, and she did not feel comfortable driving while using it. (R. 23). She testified that she drove "locally," such as taking her children to and from school and going to the grocery store. (R. 28).

Plaintiff stated that she had bad migraines once or twice a week which "totally knock me out of commission." (R. 23). Plaintiff stated that when she experienced a migraine she was sensitive to light and sound, feels nauseous, and is unable to eat or sleep. (R. 26). She said the migraines varied from five hours to three days. (R. 26).

The vocational expert testified as to Plaintiff's past work and admitted that if the ALJ found all of Plaintiff's claimed limitations credible, no competitive employment exists for her. (R. 35).

### E. The ALJ's Decision (R. 9-17)

The ALJ's written decision proceeds through all five steps of the sequential analysis. The ALJ determined Plaintiff was not disabled as defined by the Social Security Act and denied Plaintiff's application for SSI. (R. 17).

At step one the ALJ determined Plaintiff had not engaged in substantial gainful employment activity during the alleged period of disability. (R. 11). At step two the ALJ determined that Plaintiff had the following severe impairments: disorder of the spine. (R. 11).

At step three the ALJ determined that Plaintiff's impairments did not meet or

equal the requirements in the Listing of Impairments in order to be considered a presumptive disability. (R. 11).

Before proceeding to step four,[4] the ALJ determined Plaintiff's residual functional capacity (RFC) as follows: ability to perform the full range of sedentary work. (R. 11-16).

At step four, the ALJ determined that Plaintiff was not able to perform her past relevant work. (R. 16).

At step five, the ALJ found that Plaintiff had the RFC to perform the full range of sedentary work and, under the Medical Vocational Rules 201.28, she is not disabled. (R. 21).

**ANALYSIS**

    **A.    Standard of Review**

When a district court reviews the Commissioner's decision to deny Social Security benefits the <u>Court's only job is to determine whether the Commissioner's factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied</u>.[5]  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[6]  Since review is based on the record as a whole, the entire record must be

---

[4] 20 C.F.R. § 416.920(a)(4) (RFC determined before proceeding to step four).

[5] <u>Doyal v. Barnhart</u>, 331 F.3d 758, 760 (10th Cir. 2003).

[6] <u>Id.</u>

examined to determine whether the evidence supporting the decision is substantial, taking "into account whatever in the record fairly detracts from its weight."[7]  However, the Court may neither reweigh the evidence nor substitute its discretion for that of the ALJ.[8]

### B.    Determination of Disability

An individual

> shall be determined to be under a disability only if [her] physical or mental . . . impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.[9]

Disability requires more than the mere inability to work without pain.[10]

Whether a person has a "disability" supporting entitlement to DIB is determined using a five-step sequential evaluation process, which considers whether the claimant:

(1) worked during the alleged period of disability;

(2) has a severe impairment;

(3) has a condition which met or equaled the severity of a listed impairment;

---

[7] Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (quoting Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994)).

[8] White v. Massanari, 271 F.3d 1256, 1257 (10th Cir. 2001).

[9] 42 U.S.C. § 423(d)(2)(A).

[10] See Ray v. Bowen, 865 F.2d 222, 225-26 (10th Cir. 1989).

(4) can return to his or her past relevant work; and

(5) if not, whether he or she can perform other work in the national economy.[11]

If a determination can be made at any step, it is not necessary to proceed to the next step of the analysis.[12]

A severe impairment is one that "significantly limits your physical or mental ability to do basic work activities."[13] Basic work activities means "the abilities and aptitudes necessary to do most jobs."[14] This includes:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.[15]

### C.   Plaintiff's Arguments

Plaintiff argues that the ALJ failed to apply the correct legal standards for evaluating medical evidence when assessing her RFC, specifically that the ALJ

---

[11] 20 C.F.R. § 416.920(a)(4) (2008); see Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751, n.2. If claimant is successful, the burden of proof falls on the Commissioner to establish the requirements of step five. Id. at 751.

[12] 20 C.F.R. § 416.920(a)(4).

[13] 20 C.F.R. § 416.920(c).

[14] 20 C.F.R. § 416.921(b).

[15] Id.

improperly engaged in "cherry picking" evidence by accepting only those pieces of evidence supporting a finding of nondisability.

The Court finds the ALJ properly identified and discussed all relevant medical records contained in the record pertinent to Plaintiff's alleged period of disability. The ALJ found that Plaintiff did have an impairment but it did not produce symptoms as severely limiting as Plaintiff alleged.

The ALJ found Plaintiff's alleged pain since 2002 was not entirely credible as she did not seek medical treatment for more than two years (2004-2006). Avoiding all treatment for two years, although claiming to live in daily pain, is an acceptable reason to discount Plaintiff's allegations on this fact.[16]

Further, the ALJ's findings are supported by the results of Plaintiff's medical examinations. Dr. Herrera's neurological examination in February 2007 was normal. (R. 163). In April 2008, Plaintiff exhibited good strength and equal deep tendon reflexes in her arms. (R. 194). Finally, in July 2008, Dr. Lilly described his examinations of both arms as "basically unremarkable." (R. 191). Outside of Plaintiff's subjective complaints of pain, no medical evidence exists during the alleged period of disability that demonstrates debilitating, daily pain.

The ALJ's decision to not credit Plaintiff's complaints of severely debilitating migraines is supported by the record. While Plaintiff reported that her migraines were so bad she would end up in the emergency room, the record contains no evidence she

---

[16] *See* 20 C.F.R. § 416.929(c)(3)(v) (treatment received by claimant is a relevant factor in judging severity of symptoms).

was ever treated at an emergency room.  Although testifying that she would experience migraines so severe that she would be "totally . . . out of commission" for days at a time, she never reported this to any medical source. (R. 23, 26).  Plaintiff only reported having migraines"once to a medical source, in April 2008. (R. 195).  The ALJ's findings that her migraines were not an impairment is supported by substantial evidence.

The ALJ's decision to not credit Plaintiff's complaints of arm numbness is also supported by the record.  Plaintiff only intermittently reported numbness to medical sources, and nerve conduction testing yielded normal results. (R. 185).  Importantly, Plaintiff reported no weakness or numbness in her arms to medical sources during visits in April 2007 and April 2008. (R. 163, 195).

Finally, the ALJ properly discounted Plaintiff's reports of medication side effects.  Plaintiff only intermittently complained of any side effects to medical sources.  Notably, medical source examinations on August 2007, September 2007, December 2007, April 2008, and July 2008 do not reflect complaints of side effects. (R. 131, 175-76, 189-91, 195-97).  This is substantial evidence showing that Plaintiff did not suffer sever side effects lasting more than twelve months.

Next, Plaintiff argues that the ALJ failed to apply the correct legal standard in evaluating and weighing the medical opinions in the record.  The Court disagrees.

In 2007, Dr. Richie drafted two letters on Plaintiff's behalf in support of a loan discharge application.  The ALJ properly gave no weight to these opinions.

First, Plaintiff has not demonstrated that Dr. Richie was a treating source physician and, therefore, his opinions are not subject to special deference.[17]  Outside of these letters, there is no evidence that Dr. Richie examined Plaintiff or provided any type of medical treatment to her.  These letters, standing alone, do not indicate either "treatment" by Dr. Richie or any longstanding relationship between Plaintiff and Dr. Richie and cannot serve as the basis to label him a treating source.[18]

Further, through these letters Plaintiff was not seeking treatment; she was seeking the discharge of a loan.  The ALJ properly considered Plaintiff's motivation in acquiring the letters when analyzing their evidentiary value.[19]

The ALJ also rejected Dr. Richie's opinion because it was unsupported: he "did not provide clinical records, examination findings, or any objective findings to support his statements, nor did he provide any specific limitations [Plaintiff] might have."[20] (R. 14).  The record evidence confirms the ALJ's conclusion on this issue.  Instead, the letters simply memorialize the subjective complaints reported by Plaintiff.

In September 2007, Plaintiff saw Bevacqua, a physician's assistant, for an examination to determine her eligibility for a state welfare program. (Tr. 197).  As a

---

[17] *See* 20 C.F.R. § 416.902.

[18] A physician's opinion is not entitled to deference on the basis of a fleeting relationship or merely because a claimant designates the physician as her treating source. Doyal, 331 F.3d at 763.

[19] White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001) (an ALJ may consider a claimant's motive for seeing a doctor when determining if a treating relationship exists).

[20] An ALJ may reject "generic" opinions related to a plaintiff's limitations. Bean v. Chater, 77 F.3d 1210, 1214 (10th Cir. 1995).

physician's assistant, Bevacqua was not an acceptable medical source and, therefore, does not qualify as a treating medical source entitled to deference.[21]  Further, Bevacqua simply checked boxes on a state form and summarily noted that Plaintiff had degenerative disc disease in her lumbar and cervical spine.[22]  Although Bevacqua subsequently treated Plaintiff on multiple occasions, these visits all took place *after* the time the form was filled out.  There is no evidence that Bevacqua had a personal treatment relationship at the time he filled out the form, and the ALJ properly gave his opinion no weight.

Finally, Plaintiff argues that the ALJ improperly relied upon the disability examiner's RFC assessment as he was not a medical source.  The disability examiner assessed Plaintiff's RFC in July 2007.  As a "single decisionmaker," the disability examiner was not a medical source.[23]  However, the ALJ did not blindly adopt the examiner's conclusion.  Rather, the ALJ's RFC determination was significantly more restrictive than the examiner's.  While the examiner found Plaintiff could perform light work, the ALJ restricted Plaintiff to sedentary work.  The ALJ can not be found to have improper relied on the disability examiner when he did not even adopt the examiner's ultimate conclusions.  Substantial evidence exists in the record to support the ALJ's

---

[21]20 C.F.R. § 416.913(a); 20 C.F.R. § 416.902.

[22]A brief statement on a form that does not contain a "judgment about the nature and severity" of a claimant's limitations or "any information about what activities" a claimant can perform, is not a "true medical opinion[]." Cowan v. Astrue, 552 F.3d 1182, 1189 (10th Cir. 2008).

[23]20 C.F.R. § 416.1406.

sedentary work restriction.

Plaintiff's arguments not specifically referenced herein are unpersuasive. Thus, the Court concludes that the ALJ's factual findings are supported by substantial evidence and the correct legal standards were applied.

**ORDER**

Accordingly, it is

ORDERED that the February 25, 2009, written decision of Administrative Law Judge William Musseman is affirmed. It is

FURTHER ORDERED that the Complaint and cause of action are dismissed with prejudice. It is

FURTHER ORDERED that the parties shall pay their own costs and attorney's fees.

DATED at Denver, Colorado, this  10th  day of November, 2010.

BY THE COURT:

_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court